**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ONEIL GILBERT, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-142** |
| **TRAVIS DAY** | **SECTION: "T"(1)** |

# REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Oneil Gilbert, III, is a state prisoner incarcerated at the Rayburn Correctional Center in Angie, Louisiana. Gilbert was charged with possession of a firearm by a convicted felon and possession with the intent to distribute cocaine.[1] On October 19, 2022, the state amended count two of the bill of information to charge Gilbert with possession of a controlled dangerous substance, cocaine weighing less than 2 grams, in violation of La. Rev. Stat. § 40:967(C).[2] After a trial, the jury found Gilbert guilty as charged.[3] On October 24, 2022, the trial court sentenced Gilbert to a term of incarceration of 20 years on count one and two years

---

[1] Rec. Doc. 19-1 at 6, Bill of Information dated March 23, 2022.
[2] Id. at 5–6, Amended Bill of Information dated October 19, 2022.
[3] Id. at 68–69, Trial Minutes of October 19, 2022; id. at 71–72, Verdict dated October 19, 2022.

on count two, the sentences to run concurrent with each other.[4] The state filed a multiple bill charging Gilbert as a second felony offender.[5] On January 20, 2023, the trial court adjudicated Gilbert as a second felony offender, vacated his sentence as to count one, and sentenced Gilbert to a term of imprisonment of 40 years, to run concurrent with the sentence as to count two.[6]

On November 8, 2023, the Louisiana Fifth Circuit Court of Appeal affirmed Gilbert's conviction and sentence as to count one.[7] The court vacated Gilbert's sentence to count two and remanded for resentencing.[8] He was resentenced on January 20, 2023.[9] On May 29, 2024, the Louisiana Supreme Court denied Gilbert's related writ application without assigning reasons.[10]

Gilbert filed an application for post-conviction relief on September 20, 2024, raising the following claims: (1) the trial court erred in overruling his objection made pursuant to Batson v. Kentucky, 476 U.S. 79 (1986); (2) ineffective assistance of pretrial counsel in failing to investigate and obtain 911 audio through discovery and subpoena the caller's information in order to ascertain the caller's identity; (3) ineffective assistance of trial counsel in failing to investigate the 911 audio and ascertain the identity of the caller to determine statements made for confrontation purposes; (4) ineffective assistance of counsel in failing to object and/or move for a mistrial when the trial judge made prejudicial comments and displayed judicial bias in the

[4] Id. at 86, Sentencing Minutes of October 24, 2022; id. at 87, Uniform Sentencing Commitment Order dated October 24, 2022.
[5] Id. at 90–91, Amended Multiple Offender Bill dated November 10, 2022.
[6] Id. at 105, Multiple Bill Hearing Minutes of January 20, 2023; id. at 106, Uniform Sentencing Commitment Order of January 20, 2023.
[7] State v. Gilbert, 377 So. 3d 378 (La. App. 5th Cir. 2023); Rec. Doc. 19-1 at 706–21.
[8] Id. at 387–89; Rec. Doc. 19-1 at 718–21.
[9] Rec. Doc. 19-1 at 169, Resentencing Hearing Minutes of November 14, 2023; id. at 170–71, Uniform Sentencing and Commitment Order dated November 14, 2023.
[10] State v. Gilbert, 385 So. 3d 704 (La. 2024); Rec. Doc. 19-1 at 725.

presence of the jury.[11] On February 13, 2025, the state district court denied relief.[12] On May 23, 2025, the Louisiana Fifth Circuit denied Gilbert's related writ application.[13] On November 12, 2025, the Louisiana Supreme Court denied Gilbert's writ application, finding "Applicant fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). His remaining claim is procedurally barred. See La.C.Cr.P. art. 930.4(C)."[14]

On January 15, 2026, Gilbert filed his federal application seeking habeas corpus relief claiming: (1) the trial court erred in denying his Batson claim; (2) ineffective assistance of counsel in failing to investigate and obtain the 911 tapes from the prosecution through open discovery and subpoena the caller's information to ascertain the caller's identity and determine the statements made; and (3) ineffective assistance of trial counsel in failing to object or move for a mistrial when the trial judge made prejudicial comments and demonstrated judicial bias in the presence of the jury .[15]

The state responds that Gilbert's Batson claim is procedurally barred under La. Code Crim. P. art. 930.4(C).[16] It further argues that Gilbert's ineffective assistance of counsel claims are meritless.[17] Gilbert did not file a reply memorandum despite being given the opportunity to do so.

[11] Rec. Doc. 19-1 at 196–238, Uniform Application for Post-Conviction Relief signed September 20, 2024.
[12] Id. at 349–51, Order dated February 13, 2025.
[13] State v. Oneil, No. 25-KH-107, 2025 WL 1483970 (La. App. 5th May 23, 2025); Rec. Doc. 19-1 at 889–900.
[14] State v. Oneil, 422 So. 3d 753 (La. 2025); Rec. Doc. 19-1 at 1329–30.
[15] Rec. Doc. 1; Rec. Doc. 8.
[16] Rec. Doc. 20 at 13–14.
[17] Id. at 14–29.

## I. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[18] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). For purposes of applying the AEDPA, Gilbert's petition is deemed filed on January 15, 2025.[19] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

## II. Facts

> On March 6, 2022, Deputy Michael Morrison, a Jefferson Parish Sheriff's Office deputy of almost seventeen years with nearly twenty years of military experience, responded to a dispatch by the 911 operator, who had received a suspicious person call. The caller relayed via 911 that he had seen a black male break off a piece of crack cocaine, put it in a baggy, and sell it to somebody near a Honda truck (Ridgeline) in the Fast Stop store parking lot at 3220 Jefferson Highway. The initial report was made by someone named "Brian," but "Brian" was never located or interviewed. Deputy Morrison was not initially given a description, but when he asked the dispatcher for a better description, he was told that it was a bald, black man wearing black pants and a black shirt.

[18] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[19] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998) (mailbox rule applies to determine if AEDPA applies even if filing fee is paid later); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Gilbert did not date his original deficient petition. Rec. Doc. 1 at 10–11; Rec. Doc. 1-1 at 23. The envelope including his petition, however, is postmarked January 15, 2026. Rec. Doc. 1-6 at 1.

When Deputy Morrison arrived on the scene, he did not see anyone matching the description, but was able to speak with someone in the parking lot about who owned the truck. The person was not able to provide Deputy Morrison with a name but stated that the owner of the subject truck was a bald, black male wearing a blue shirt and black pants. Deputy Morrison also spoke with a clerk inside the store, who stated that the Honda pick-up truck belonged to a bald, black male wearing black pants and a blue shirt.[3] The clerk further noted that the person driving the subject truck told him that he would be right back because he had lost his key and was going back to his house to get a spare. The clerk last saw this person walking southbound on Shrewsbury Court.

As Deputy Morrison was speaking with the clerk, Deputy Justin McCubbins, arrived on the scene to assist with the investigation.[4] Deputy Morrison provided Deputy McCubbins with a description of the subject soon thereafter, whereupon Deputy McCubbins relayed that he had just seen a black male who matched the description exiting the corner of the parking lot, heading southbound, down Shrewsbury Court on foot. More specifically, Deputy McCubbins testified that as he walked out of the store, he saw defendant walking towards them but the defendant turned around and started walking extremely fast in the opposite direction when he saw the deputies. As a result, Deputy Morrison pursued on foot while Deputy McCubbins entered his unit and drove southbound.

Deputy McCubbins drove past defendant, pulled in front of him on Shrewsbury Court and exited his vehicle as Deputy Morrison was still walking down the road towards them. Deputy McCubbins instructed defendant to stop and drop the two yellow bags that he was carrying. Defendant refused, so Deputy McCubbins grabbed the yellow bags and placed them on the ground. When he grabbed the bags, he could immediately tell by the weight that one of the bags was heavier than the other. In his experience this suggested that the bag contained a firearm. Deputy McCubbins advised defendant of his Miranda rights as Deputy Morrison approached. Defendant was then brought over to the vehicle to be handcuffed and searched for officer safety, at which point he began to resist. The deputies were able to gain control and get handcuffs on defendant. Defendant was then brought to the other side of the car and patted down by Deputy McCubbins, who felt what he believed to be narcotics packaging in defendant's right pocket.

At this point, Deputy Morrison took over the pat-down and felt a slightly oblong object consistent with a marijuana bud in defendant's right, front, pants pocket. He pulled the zipper down and observed what he believed to be drugs on top, all while smelling a strong odor of marijuana. During the subsequent search, the deputies located a large white bag containing marijuana, a smaller bag that contained crack cocaine, and some wadded up money in multiple denominations. These items were removed and placed in Deputy McCubbins's unit. Deputy Morrison also found several bullets and a crack pipe in defendant's front, left, jean jacket pocket, which he put on top of the unit by the windshield. At this point, Deputy Morrison became concerned about continuing the search on the street

> because it was nighttime and dark, so they all relocated to the store parking lot. Unfortunately, the bullets and crack pipe were lost as they were forgotten about and left on the hood during the drive back. Deputy Morrison escorted defendant back to the store parking lot on foot.
>
> When they arrived back at the parking lot, Deputy Morrison again advised defendant of his Miranda rights by memory and told him that there had been a report of him selling crack cocaine and that someone had observed him break off a piece of crack, put it in a bag, and sell it. Defendant eventually admitted to such when speaking with Detective Colton O'Connor, who had been summoned to the scene by Deputy Morrison. After being advised of his Miranda rights again by Detective O'Connor, defendant admitted that he had sold a little bit of cocaine to a friend of his. Detective O'Connor did not testify at the trial.
>
> Sometime after arriving back at the store, Deputy Morrison searched the two yellow bags and found a Taurus revolver with five rounds of .38 caliber ammunition inside the revolver. The deputies also searched defendant's truck after receiving his consent to do so. They did not locate additional weapons or narcotics, but found suitcases in the back of the truck that contained clear, plastic baggies.
>
> Upon running defendant's rap sheet, Deputy Morrison learned that defendant was on probation or parole and that he had a history of armed robbery and rape offenses. Defendant was arrested for (1) possession with intent to distribute crack cocaine under La. R.S. 40:967A, (2) possession of a firearm with controlled dangerous substance under La. R.S.14:95E, (3) felon in possession of a firearm under La. R.S. 14:95.1, and (4) possession of marijuana under La. R.S. 40:966C.

## III. Discussion

### A. Batson Claim

Gilbert claims that the trial court erred in overruling his Batson objection. The state responds that Gilbert's claim is procedurally barred.

Gilbert raised his Batson claim in his application for post-conviction relief.[20] The state district court found that, because Gilbert failed to raise the issue on direct appeal, it was barred by La. Code Crim. P. art. 9304.(C).[21] The Louisiana Fifth Circuit found, in pertinent part,

[20] Rec. Doc. 19-1 at 208–21, Memorandum in Support of Application for Postconviction Relief signed September 21, 2024.

[21] Id. at 349–50, Order dated February 13, 2025.

"relator's Batson claim is now foreclosed from post-conviction review given the district court's application of La. C.Cr.P. art. 930.4(C)'s procedural bar to this claim."[22] The Louisiana Supreme Court also found that claim to be procedurally barred under La. Code Crim. P. art. 930.4(C).[23]

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Moreover, "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

Clearly, the procedural rule on which the state courts relied is "independent" and "adequate." The state courts' rulings clearly were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for post-conviction review. See Rogers v. Mississippi, 555 F. App'x 407, 408 (5th Cir. 2014) (state courts' clear reliance on state procedural rule is determinative of the issue). The state-law procedural grounds were entirely independent of federal law. Furthermore, as federal courts continually recognize, the independent state-law bar imposed under article 930.4(C) is regularly and evenly applied by the

[22] Oneil, 2025 WL 1483970, at *3; Rec. Doc. 19-1 at 894–95.
[23] Oneil, 422 So. 3d at 753; Rec. Doc. 19-1 at 1330.

state courts in similar cases. See, e.g., Shurley v. Hooper, No. 23-1563, 2023 WL 11886903, at *11 (E.D. La. Oct. 3, 2023) (finding articles 930.3 and 930.4(B) and (C) are independent and adequate to bar federal review of claims), adopted, 2025 WL 1575787 (E.D. La. June 4, 2025); Faciane v. Kent, No. 20-809, 2020 WL 6489577, at *8 (E.D. La. Oct. 14, 2020) (finding article 930.4(C) restriction is independent and adequate to bar federal review of claims), adopted, 2020 WL 6483112 (E.D. La. Nov. 4, 2020); Coleman v. Cain, No. 07-3655, 2014 WL 348541, at *5 (E.D. La. Jan. 31, 2014) (finding Article 930.4(B) & (C) are independent and adequate to bar federal habeas review); Johnson v. Cain, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (finding Article 930.4(C) is independent and adequate state procedural bar).

The state courts' reason for dismissal of Gilbert's Batson claim was independent of federal law and adequate to bar review of his claim in this federal habeas court.

Where, as in the instant case, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, Gilbert demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Here, Gilbert raises ineffective assistance of appellate counsel as cause for the procedural default of his claim.[24] As discussed later in this opinion, however, Gilbert fails to demonstrate that the state courts' finding that appellate counsel was not ineffective in failing to raise the Batson claim on appeal was contrary to or an unreasonable application of Strickland. Where, as here, a petitioner's ineffective assistance of counsel claim is meritless, it cannot serve as cause for a procedural default. Cotton v. Cockrell, 343 F.3d 746, 755 (5th Cir. 2003); Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992); Bella v. Cain, No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); Arita v. Cain, No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 F. App'x 352 (5th Cir. 2012).

Because the purported ineffectiveness of appellate counsel cannot serve as cause for the default of Gilbert's Batson claim, and because Gilbert has established no other cause for default of the claims, the Court need not consider whether actual prejudice would result from the application of the procedural bar. Martin, 98 F.3d at 849.

As Gilbert has not met the "cause and prejudice" test, his Batson claim is barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted). The United States Supreme Court has cautioned, however:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be

[24] Rec. Doc. 8-1 at 10; Rec. Doc. 8-2 at 12–18.

> exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995).

Here, Gilbert presents **no** new evidence whatsoever of his actual evidence that would excuse the procedural default of his Batson claim. He, therefore, has not established that any miscarriage of justice will result from the application of the procedural bar.

Accordingly, Gilbert's Batson claim is procedurally barred from federal review.

**B. Ineffective Assistance of Counsel Claims**

Gilbert alleges he received ineffective assistance of both trial and appellate counsel. He specifically argues that trial counsel was ineffective for failing to investigate and obtain the 911 tapes from the state through open discovery. He also alleges that trial counsel was ineffective in failing to subpoena the 911 caller's information prior to trial to ascertain the identity of the caller and determine the statements made by the caller for purposes of cross-examination and confrontation. He also alleges trial counsel was ineffective in failing to object or move for a mistrial in response to the trial judge's comments during jury selection, which he contends were prejudicial and demonstrated judicial bias. Finally, he argues that his appellate counsel was ineffective in failing to raise the Batson issue on appeal.[25]

These claims were denied by the state courts in Gilbert's post-conviction proceedings. The state district court found that Gilbert failed to prove any deficiency in his counsel's performance or any resulting prejudice.[26] The Louisiana Fifth Circuit found:

> In his first claim, relator contends that trial counsel rendered ineffective assistance by failing to obtain the recording of the 9-1-1 call that led to his arrest

---

[25] Rec. Doc. 8-1 at 10; Rec. Doc. 8-2 at 12–18.

[26] Rec. Doc. 19-1 at 350, Order dated February 13, 2025.

and further by failing to conduct an investigation to identify the caller. Relator also faults counsel for failing to object or move for a mistrial based on Judge Brindisi's remarks during *voir dire*, suggesting that the trial judge was biased in favor of the State.

Under the Sixth Amendment to the United States Constitution, and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. Casimer, 12-678 (La. App. 5 Cir. 3/13/13), 113 So.3d 1129, 1141. To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Casimer, 113 So.3d at 1141. Under the Strickland test, the defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. *Id.* An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Id. To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Id. (citing Strickland v. Washington).

In the instant case, the State provided the defense with open-file discovery, including the 9-1-1 call, "available for inspection by appointment by request." In addition, the State's discovery receipt indicates that the defense downloaded or previewed a computer-aided dispatch report of the 9-1-1 call. The excerpted transcript from the motion to suppress hearing included in relator's application also shows that counsel questioned Deputy Morrison regarding the 9- 1-1 call. Specifically, on cross-examination, Deputy Morrison testified that he did not personally speak to the caller and that he was unable to "find the person." Thus, despite relator's claim to the contrary, it appears that counsel was fully aware of the contents of the 9-1-1 call. Although relator complains that counsel failed to subpoena the caller, known only as "Brian," to testify at the motion to suppress hearing, relator's assertion that the caller would have provided helpful information to the defense appears speculative at best, particularly when the 9- 1- 1 call was inculpatory in nature. In any event, even assuming the caller could be located, the Louisiana Supreme Court has specifically held that the right to confrontation contained in the United States and Louisiana Constitutions is not implicated in a pre-trial matter. See State v. Mackey, 21-252, 2021 WL 2926118 (La. App. 5 Cir. 7/12/21) (citing State v. Harris, 08-2117 (La. 12/19/08), 998 So.2d 55. Finally, to the extent that relator appears to re-litigate his motion to suppress, this Court found on appeal that "the deputies had reasonable suspicion to stop defendant based upon the tip, corroborating evidence and independent observations of the deputies." Gilbert, 377 So.3d at 386. As such, we find that relator's re-purposing of the claim as one of ineffective assistance of counsel is also without merit. See State v. Williams, 613 So.2d 252, 256-57 (La. 1992) ("When the substantive issue that an attorney has not raised has no merit, then the claim the attorney was ineffective for failing to raise the issue also has no merit.").

> Relator also complains that Judge Brindisi's explanation of the "one-witness rule" during *voir dire* included an example in which the trial judge, casting himself as a hypothetical eyewitness, referred to the prosecutor by her first name and portrayed her as a victim who was his "friend."[4] In relator's view, the trial judge's personal references to the prosecutor constituted a failure on Judge Brindisi's part to "avoid impropriety and the appearance of impropriety," thereby warranting an objection by counsel or a motion for a mistrial. However, "[t]he time and manner of making objections is part of the trial strategy decision-making of the trial attorney." State v. Moore, 16-644 (La. App. 5 Cir. 3/15/17), 215 So.3d 951, 968. On the showing made, relator fails to demonstrate counsel erred. See La. C.Cr.P. art. 930.2.[5]
>
> [4] The one-witness rule refers to the legal standard that in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if beleiged by the trier of fact, is sufficient to convict. State v. Riley, 11-673 (La. App. 5 Cir. 3/13/12), 90 So.3d 1144, 1149-50, writ denied, 12-855 (La. 9/28/12), 98 So3d 828. Realtor does not challenge the legal accuracy of Judge Brindisi's explanation of the one-witness rule in his claim.
>
> [5] La. Cr.Cr.P. art. 930.2 states: "The petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted."
>
> Consequently, relator has not "overcome the presumption that, under the circumstances, [counsel's decisions] 'might be considered strong trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed.2d 83 (1955)). Against this backdrop, relator has not demonstrated that the claimed errors rendered his trial "fundamentally unfair." Strickland, 466 U.S. at 700, 104 S.Ct. at 2071. We find no merit to this claim.[27]

As to his claim of ineffective assistance of appellate counsel, the Louisiana Fifth Circuit found:

> According to relator, the trial court erred in denying his Batson objection by finding that the State presented race-neutral reasons in exercising its peremptory challenges to remove four Black prospective jurors. Relator now faults appellate counsel for failing to challenge the trial court's ruling on appeal.
>
> The Batson decision is codified in La. C.Cr.P. art. 795(C), which provides that no peremptory challenge made by the State or the defendant shall be based solely upon the race of the juror. La. C.Cr.P. art. 795(C) further provides that if an objection is made that the State or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race-neutral reason for the

[27] Rec. Doc. 19-1 at 371–73, La. App. 5th Cir. Order, 25-KH-107, dated May 23, 2025.

exercise of the challenge, unless the court is satisfied that such reason is apparent from the *voir dire* examination of the juror.

A review of the excerpted *voir dire* transcript in relator's application reveals that the defense raised a Batson objection after the State peremptorily challenged Alaina Brown, Michael Gabriel, Kerrion Porter, and Bertha Lacroix, all of whom were Black. In response, the State explained that Ms. Brown and Mr. Gabriel were removed based on their inattentiveness. As for Ms. Porter and Ms. Lacroix, the State asserted that the two women were removed because they were elementary school teachers, and in the prosecutor's experience, teachers "seem to want to forgive and forget." The prosecutor also pointed out that the State did not keep any elementary school teachers. The trial court then denied relator's Batson challenge upon finding that the State's reasons were race-neutral.

In State ex rel. Cockerham v. Butler, 515 So.2d 1134, 1138 (La. App. 5 Cir. 1987), this Court found that the Supreme Court in Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), by implication, adopted the Strickland standard as a measure in determining effectiveness of appellate counsel when it concluded that the right to counsel on appeal is the right to effective assistance of counsel. Specifically, this Court found that the assignments that the defendant alleged should have been argued on appeal were without merit, and therefore, the result of his appeal would not have been different had counsel argued the assignments. Therefore, the relator had not made the requisite showing to support his claim of ineffective assistance of appellate counsel. See Cockerham.

In the instant case, relator has failed to show that counsel's failure to raise the Batson issue on appeal constituted deficient performance. First, the State provided sufficient race-neutral reasons for removing two potential jurors who were inattentive; see State v. Banks, 96-652 (La. App. 5 Cir. 1/15/97), 694 So.2d 401, 409 ("This court has held that perceived hostility, lack of interest, and unresponsiveness are race-neutral reasons to exclude prospective jurors."), and two other potential jurors based on their employment as elementary school teachers. See State v. Wilson, 09-170 (La. App. 5 Cir. 11/10/09), 28 So.3d 394, 405 n.4, writ denied, 09-2699 (La. 6/4/10), 38 So.3d 299 ("Being a teacher has been held to be a racially-neutral reason to meet the State's burden at Batson's second step."). Thus, relator fails to show prejudice under the second prong of Strickland by appellate counsel's failure to raise the Batson claim on appeal. See State v. Francois, 13-616 (La. App. 5 Cir. 1/31/14), 134 So.3d 42, 59, writ denied, 14-431 (La. 9/26/14), 149 So.3d 261 ("When the substantive issue that an attorney has not raised is without merit, then the claim that the attorney was ineffective for failing to raise the issue also has no merit.").

Furthermore, an attorney need not advance every argument, regardless of merit, urged by appellant. State v. Castillo, 13-552 (La. App. 5 Cir. 10/29/14), 167 So.3d 624, 653, writ denied sub nom. State ex rel. Castillo v. State, 14-587 (La. 11/7/14), 152 So.3d 172, and writ denied, 14-2567 (La. 9/18/15), 178 So.3d

145. Experienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most, on a few key issues. Castillo (citing Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)).

Here, appellate counsel moved to supplement the record on appeal with the transcript of the entire jury selection process, which this Court granted. On appeal, appellate counsel, an attorney with the Louisiana Appellate Project, filed a lengthy brief challenging the trial court's ruling which denied the motion to suppress.[10] It appears appellate counsel decided to pursue an arguably stronger claim and forgo the Batson claim following a review of the record. See State v. Cuza, 21-9 (La. App. 5 Cir. 2/8/21), writ denied, 21-377 (La. 5/3/22), 337 So.3d 150 (per curiam), in which the relator claimed that his appellate counsel was ineffective in failing to appeal his claim that he was denied a jury of his peers due to the absence of Hispanics. In concluding that the relator failed to show that counsel's failure to raise these issues on appeal constituted deficient performance, this Court found:

> The appellate record from relator's appeal reflects that his appellate counsel, who is with the Louisiana Appellate Project, filed a well-reasoned and thorough brief that challenged the sufficiency of the evidence, specifically pointing out the numerous inconsistencies in the State's case and the conflicting testimony presented at trial.
>
> The fact that appellate counsel did not raise these two issues in her brief in no way renders her representation of relator ineffective, especially considering that relator has failed to show that the appellate court would have granted relief had the issue been raised. With regard to relator's argument about the absence of Hispanics on the jury, he has provided this Court with only an excerpt of transcript that shows that no Hispanics were on the jury and that one potential Hispanic juror was removed because he was unable to understand the English language, which is a disqualifying factor.

*Id.* (Internal footnote omitted.) In the same way, we find appellate counsel did not render ineffective assistance in relator's case.[28]

[10] Relator's appellate record reflects that his Motion to File a Supplemental *Pro Se* Brief was granted by this Court and has was provided a copy of the record to review, but apparently, he chose not file a supplemental *pro se* brief.

[28] Id. at 375–78.

The Louisiana Supreme Court denied Gilbert's related writ application, finding that he failed to demonstrate that he received ineffective assistance of counsel under Strickland.[29]

In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief on such a claim is required to show **both** that counsel's performance was deficient **and** that the deficient performance prejudiced his defense. 466 U.S. at 697. The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct

[29] Oneil, 422 So. 3d at 753; Rec. Doc. 19-1 at 1329–30.

of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

**1. Trial Counsel**

Gilbert first asserts that his trial counsel failed to adequately investigate the case. " 'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.' " Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011) (citation omitted). Notably, a petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed. Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Here, Gilbert presents only self-serving allegations in support of his contention that counsel was ineffective for failing to investigate the 911 call. He presents no objective evidence at all to establish that his counsel in fact failed to conduct a proper investigation. Bare speculation does not suffice to meet a petitioner's burden of proof. See Massey v. Cain, No. 14-2952, 2016 WL 5376239, at *10 (E.D. La. June 21, 2016), adopted, 2016 WL 5362992 (E.D. La. Sept. 26, 2016); see also Ross v. Estelle, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro*

*se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.") Further, the record reflects that defense counsel actively engaged in discovery and was provided a copy of the 911 printout.[30] According to the 911 printout, someone reported a black male with a black Honda pickup truck who was selling crack at the FastStop.[31] The person reported that he saw the subject separate crack rocks into two plastic baggies and sell it.[32] Further, at the suppression hearing, defense counsel elicited testimony relating to the 911 call.[33] Finally, Gilbert has failed to adduce what further investigation into the 911 call would have shown. For these reasons, Gilbert fails to establish that counsel's investigation was deficient or any resulting prejudice.

Gilbert also faults his counsel for failing to object to suppression hearing testimony relating the 911 call. At the suppression hearing, Deputy Morrison testified that he responded to a confidential complaint via 911 of a black male by a black Honda pickup truck selling drugs by the FastStop.[34] Morrison testified that he believed the caller's name to be "Brian," but explained that he was unable to locate the caller at the location.[35] Morrison testified that, when he arrived at the location, he was told that a black man wearing a blue shirt and black pants had been by the pickup truck.[36] Morrison entered the FastStop and did not observe anyone inside matching the description of the subject.[37] A store clerk advised him that the Honda belonged to a bald black male with a red shirt and blue pants.[38] On cross-examination, Morrison again explained that

---

[30] Rec. Doc. 19-1 at 305–06, undated 5th Supplemental Discovery Receipt and Stipulation for Reciprocal Discovery.
[31] Id. at 307, 911 Printout dated July 13, 2022.
[32] Id.
[33] Id. at 566–67, Suppression Hearing Transcript of July 13, 2022.
[34] Id. at 559.
[35] Id. at 563, 566–67.
[36] Id. at 559.
[37] Id.
[38] Id. at 559–60.

someone called 911 to complain that there was a black male selling drugs by a Honda Ridgeline in a parking lot at the FastStop.[39] Morrison testified that Deputy McCubbins arrived at the scene and told Deputy Morrison that he observed a black male fitting the description exiting the parking lot going southbound on Shrewsbury Court.[40] Deputy McCubbins ultimately stopped Gilbert, who met the general description.[41] Defense counsel also elicited testimony from Morrison that he never found the caller and did not speak to him directly.[42] Morrison also testified that the caller did not provide a description of the suspect beyond a black male and with a black Honda pickup truck.[43]

Gilbert's claim that his counsel was ineffective in failing to object to Morrison's testimony at the suppression hearing is not a meritorious one. In short, there was no basis for an objection because Louisiana law provides that "hearsay rules do not apply in hearings on motions to suppress evidence." State v. Shirley, 10 So.3d 224, 228 (La. 2009); accord State v. Bentley, 116 So.3d 891, 896 (La. App. 4th Cir. 2013) ("[H]earsay testimony is admissible in a suppression hearing."), writ denied, 130 So. 3d 341 (La. 2014). Therefore, any objection on hearsay grounds would be meritless, and it is clear that the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

---

[39] Id. at 566–67.
[40] Id. at 560.
[41] Id.
[42] Id. at 566.
[43] Id. at 567.

It is unclear whether Gilbert is also attempting to claim that counsel was ineffective for failing to object to Morrison's suppression hearing testimony on the ground that it violated his Confrontation Clause rights under Crawford v. Washington, 541 U.S. 36 (2004). If so, that argument fares no better.

In Crawford, the Supreme Court concluded that the Confrontation Clause only applies to "testimonial" statements; it does not bar the admission of out-of-court statements that are nontestimonial. 541 U.S. at 59; see Whorton v. Bockting, 549 U.S. 406, 412 (2007) (affirming that the Confrontation Clause does not apply to nontestimonial out-of-court statements). Crawford does not apply to statements "procured for the primary purpose of allowing police to assist in an ongoing emergency or ... under other circumstances where the primary purpose is not to create an out-of-court substitute for trial testimony." Brown v. Epps, 686 F.3d 281, 287 (5th Cir. 2012). Crawford did not, however, involve a pretrial suppression hearing, and there is no Supreme Court precedent holding that the Confrontation Clause applies in pretrial suppression hearings[44] or that counsel can be ineffective for failing to raise a Confrontation Clause objection in such a hearing.

---

[44] As the United States Tenth Circuit Court of Appeals has noted: "There is no binding precedent from the Supreme Court or this court concerning whether Crawford applies to pretrial suppression hearings." United States v. Garcia, 324 Fed. App'x 705, 708 (10th Cir. 2009). The Tenth Circuit went on to note:

> To the extent that we can divine clues from our case law concerning the resolution of this issue, they do not benefit Mr. Garcia. See United States v. Miramonted, 365 F.3d 902, 904 (10th Cir. 2004) (decided after Crawford, but without citing it, holding that "hearsay is admissible at a hearing on a motion to suppress and should have been considered by the district court"); cf. United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir. 2006) ("Crawford concerned the use of testimonial hearsay statements **at trial** and does not speak to whether it is appropriate for a court to rely on hearsay statements at a sentencing hearing." (emphasis added)).
>
> Moreover, apparently few federal courts have squarely addressed the issue. See, e.g., United States v. Morgan, 505 F.3d 332, 338 (5th Cir. 2007) ("[T]he Fifth Circuit has not decided whether Crawford applies to pretrial proceedings and determinations...."); Francischelli v. Potter, No. 1:03-CV-6091-ENV, 2007 WL 776760, at * 10 (E.D.N.Y. Mar. 12, 2007) ("[T]he Court can find no authority applying Crawford to a suppression hearing."). And Mr. Garcia can find little solace in the rulings of those courts that have definitively spoken. See, e.g., Washburn v. United States,

Gilbert also appears to fault his counsel for failing to object to trial testimony related to the 911 call. At trial, the state elicited brief and general testimony from Deputy Morrison and Deputy McCubbins that they responded to a call of a suspicious person with narcotics drugs by a pickup truck at the FastStop.[45] The purpose of the testimony was not to prove the truth of the matter asserted, however, but rather to explain why police were dispatched to the location. Further, the Fifth Circuit has found that statements to 911 operators, similar to those made by the 911 caller in this case, are non-testimonial and not barred by the Confrontation Clause. United States v. Polidore, 690 F.3d 705, 710–19 (2012); accord United States v. Ramirez-Gonzalez, No. 25-30457, 2026 WL 1349589, at *1 (5th Cir. May 14, 2026). Therefore, Gilbert fails to show that his counsel was ineffective in failing to object to the limited testimony related to the 911 call or any resulting prejudice.

Next, Gilbert complains that his trial counsel should have subpoenaed the 911 caller to testify at trial. With regard to the failure to subpoena the witnesses to testify at trial, the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony,

---

No. 3:05-CV-774 RM, 2006 WL 3715393, at *4 (N.D. Ind. Dec. 14, 2006) (noting that Crawford's applicability to pretrial suppression hearings is "an issue of first impression" in the Seventh Circuit and finding that defendant's "reliance on Crawford is misplaced"); United States v. Thompson, No. 4:05CR00161 HEA(AGF), 2005 WL 3050634, at *6 (E.D. Mo. Nov. 14, 2005) (rejecting Crawford's alleged applicability to a pretrial suppression hearing, noting "Crawford does not change the long-standing prior precedent that permits the use of hearsay in preliminary proceedings dealing with the admissibility of evidence").

Garcia, 324 F. App'x at 708-09.

[45] Rec. Doc. 19-1 at 591, 616, Trial Transcript of October 19, 2022.

> and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

First, Gilbert has not shown the 911 caller was available to testify at trial. Second, Gilbert provides no evidence that the witness would have testified in a manner beneficial to the defense. In fact, he fails to explain what testimony the witness would have provided. Therefore, Gilbert failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit

(or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.”).

Gilbert next claims his trial counsel was ineffective in failing to move for a mistrial on the basis of “prejudicial comments and judicial bias.”[46] Gilbert specifically complains of a fictitious scenario used by the trial judge to explain the one-witness concept to prospective jurors in which the trial judge was the sole witness and “Kristen,” one of the prosecutors, was a “friend” who was attacked. Gilbert also complains that the trial judge told the jurors that he was a former prosecutor.[47]

During voir dire, as the prosecution explained testimonial evidence, the trial judge stated:

> Let me interrupt one second, Carolyn.
>
> Ladies and gentlemen, let me explain this to you. Louisiana is a state which follows the one-witness rule. And what the one-witness rule says is if there’s a case with no physical evidence and there’s just one witness who saw the crime and can identify the perpetrator, if you believe that witness, it’s sufficient to convict.
>
> Now, I know as Americans we have a problem with that. Let me give you an example. Let’s say I’m out in the hallway and I see Kristen sitting down with he prosecutor out in the hallway. Somebody walk up to Kristen with a gun and a knife. They take the gun; they point it at Kristen; they shoot her. They take the knife; they stab her. They rob her wallet. They rob her money. They rob her jewelry. And they run. And the person is wearing white tennis shoes. Blue jeans and a white T-shirt. And I see it. I’m a witness. I see the whole thing. I’m sitting there and I watch it and I’m stunned. And the guy just runs away. And the cops come. The police officers come. And I say, Look, officers, I saw what he looks like. If you find him, I’ll identify him. I was sitting right here. I saw the whole thing happen. I’ll never forget that face. Kristen is a friend of mine.
>
> Well, days later they find the guy, only the gun’s not found. He threw the gun in the river. The money’s not found. The jewelry’s not found. The wallet’s not found. The knife is not found. He’s not even wearing the same clothes. He’s not wearing the blue jeans, the tennis shoes and the white shirt. But as soon as they bring him to me, I know immediately it’s him. I saw his face. I know exactly that it’s him. I say, Officer, I don’t are if you don’t have the gun or the knife. That’s

---

[46] Rec. Doc. 8-1 at 8; Rec. Doc. 8-2 at 20.

[47] Rec. Doc. 8-2 at 21.

> him. I'll never forget that face. And we have a trial. And you're sitting as jurors. And I get up there and testify. And I say, Ladies and gentlemen, I don't care if the gun wasn't found, if the knife wasn't found, if the money wasn't found, the jewelry; that's him. I'll never forget that face. That's the man that did it. And you believe me. You believe what I'm telling you is the truth. Well, in America – most states in America – all states in America, you can find that person guilty of murder on my testimony. That's the one-witness rule….[48]

A decision as to whether to move for a mistrial is one of trial strategy. Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008) ("It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one."); see Hatch v. Lambert, 215 F. App'x 614, 615 (9th Cir. 2006); Brooks v. Cain, No. 06-1869, 2009 WL 3088323, at *17 (E.D. La. Sept. 21, 2009); Franklin v. Thompson, No. 07-543, 2007 WL 3046642, at *12 (E.D. La. Oct. 17, 2007). The United States Fifth Circuit Court of Appeal has noted that counsel's "conscious and informed" strategic decision not to seek a mistrial "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) (quoting Martinez v. Dretke, 404 F.3d 878, 885 (5th Cir. 2005) (internal quotations omitted)). In making that decision, counsel is "required to balance the harm caused by the [improper conduct] against the legitimate possibility that a new trial would present less propitious prospects for his client." Id.

Moreover, it is clear that the strategic decisions of counsel are accorded a large measure of deference. Indeed, as noted previously, the United States Supreme Court expressly held in Strickland: "Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

---

[48] Rec. Doc. 19-1 at 794–96, Voir Dire Transcript of October 19, 2022.

under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689 (quotation marks omitted).

Initially, under La. Code Crim. P. art. 786, the trial judge has the right to examine prospective jurors and control the scope of jury selection. Here, the trial judge, in explaining the privilege of jury duty, mentioned that he was a former prosecutor.[49] Those comments, as well as his reference to a prosecutor by her first name and his explanation of the one-witness rule were not grounds for a mandatory mistrial under Louisiana law. See La. Code Crim. P. art. 770.[50]

Nor were any of the incidents of which Gilbert complains indicative of bias and/or prejudice against Gilbert, and none would tend to predispose the jury toward a finding of guilt. The record reflects that, throughout voir dire, the trial judge explained or clarified points being made by **both** the prosecution and the defense.[51] For example, the trial judge commented that defense counsel was "absolutely correct" that there is no such verdict as a finding of innocence

---

49 Id. at 736, 739, 742.

50 La Code Crim. P. art. 770 provides:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> (3) The failure of the defendant to testify in his own defense; or
>
> (4) The refusal of the judge to direct a verdict.
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

51 Rec. Doc. 19-1_at 770–73, 775, 777–78, 797–99, 818–21, 824–26, 834–36, Voir Dire Transcript of October 19, 2022.

and explained in detail that it was the state's burden to prove Gilbert's guilt.[52] He further stated that the defense was "absolutely correct" in its explanation regarding the credibility of witnesses.[53] The trial judge also explained that the jurors were the ultimate judges of the facts and were to make their own credibility determinations.[54] The record also reflects that, on a number of occasions, the trial judge referred to **both** the prosecutors and the defense attorneys by their first names.[55] Finally, the trial judge instructed the jury that, "If I have given you the impression that I have an opinion concerning the guilt or innocence of the defendant, you are to disregard that impression.[56]

Louisiana law did not require or provide any support for his counsel to move for a mistrial where no basis for such a motion existed. Counsel did not act deficiently or prejudicially in failing to present a meritless motion for a mistrial. McKee v. Cain, No. 10-344, 2010 WL 4366041, at *9 (E.D. La. Sept. 30, 2010), adopted, 2010 WL 4362769 (E.D. La. Oct. 25, 2010); Fields v. Cain, No. 05-0074, 2007 WL 458208, at *4 and 17 (E.D. La. Feb. 8, 2007).

For all these reasons, Gilbert has failed to establish any deficiency or prejudice under Strickland arising from his trial counsel's representation of him. He is not entitled to relief as to the foregoing claims of ineffective assistance of counsel.

**2. Ineffective Assistance of Appellate Counsel Claim**

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. To prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable

---

[52] Rec. Doc. 19-1 at 818–21, 825–26, Trial Transcript of October 19, 2022.
[53] Id. at 834–36.
[54] Id. at 836.
[55] Id. at 762, 773, 801, 813, 818, 834, 841, 881, 882.
[56] Id. at 522, Criminal Jury Charges dated October 19, 2022.

probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [defendant]." Evitts v. Lucey, 469 U.S. 387, 394 (1985). Thus, appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). Further, failing to raise every meritorious claim on appeal does not make counsel deficient. Green v. Johnson, 116 F.3d 1115, 1125–26 (5th Cir. 1997) (citing Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir. 1989)). Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." Id. at 1037. Courts give great deference to professional appellate strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues...." Jones v. Barnes, 463 U.S. 745, 751–52 (1983). This is true even where the weaker arguments have merit. Id. Far from evidencing ineffectiveness, an appellate counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753. As a result, when assessing a claim alleging ineffective assistance of appellate counsel, the court looks to whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal. See, e.g., Diaz v.

Quarterman, 228 F. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288, (2000).

In the instant case, appellate counsel's motion to supplement the record with the voir dire transcript was granted.[57] After receipt, and presumably review, of the transcript, appellate counsel raised a singular issue on appeal, that the trial court erred in denying the motion to suppress.[58] Although the state courts ultimately denied the claim, it was not frivolous – and, more importantly, the Batson claim Gilbert now proposes is not clearly stronger. Therefore, Gilbert cannot show he was prejudiced by its omission for the following reasons.[59]

During jury selection, defense counsel raised a Batson challenge and claimed that the prosecution had excused every African American.[60] The prosecution responded that she excused Alaina Brown because she seemed like she was not paying attention.[61] The prosecution explained that Brown asked her to repeat several things and did not seem very engaged in either its or the defense's voir dire.[62] The prosecution explained that it excused Michael Dwayne Gabriel because he had problems about reasonable doubt evidence and did not know what his verdict would be if he heard no evidence.[63] The prosecutor further stated, "I just don't know if he wasn't paying attention or what was going on."[64] The prosecutor explained that she struck

---

[57] Id., Order dated March 28, 2023; id. at 667–68, Appellant's Motion to Supplement the Record and to Suspend Briefing Deadlines filed March 28, 2023.
[58] Id. at 670, 673–81, Appellate Brief, 2023 KA 0121, submitted March 22, 2022.
[59] Gilbert had the opportunity to raise the issue himself in a *pro se* supplemental brief. His request to review the record and file a supplemental brief was granted. Id. at 702, Order dated August 22, 2023; id. at 703–04, Designation of Record postmarked August 18, 2023. Gilbert apparently chose not to prepare a supplemental brief. He provides no reason for failing to do so.
[60] Id. at 851, Voir Dire Transcript of October 19, 2022.
[61] Id. at 852.
[62] Id.
[63] Id.
[64] Id.

Kerrion Porter because of her occupation as an elementary school teacher.[65] The prosecution explained that they tended not to keep teachers because, in their experience, teachers seem to want to "[f]orgive and forget."[66] The trial court found that the reasons provided by the prosecution for striking Brown, Gabriel, and Porter were race neutral.[67] Defense counsel asked the trial court to note an objection for the record.[68]

Later in the selection process, the prosecution struck Bertha Lacroix, and the defense asked, "What's the reason?"[69] The prosecution responded that Lacroix teaches elementary school and that teachers tend to forgive and forget.[70] Defense admitted that the prosecution did not retain any elementary school teachers.[71] The trial judge found the reason to be race neutral, and the defense did not object.[72]

In Batson, the Supreme Court has held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause. Batson, 476 U.S. at 89. The United States Supreme Court has established a three-step analysis for a Batson challenge:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Snyder v. Louisiana, 552 U.S. 472, 476–77 (2008) (quotation marks and brackets omitted).

---

[65] Id. at 853.
[66] Id. at 854.
[67] Id.
[68] Id.
[69] Id. at 862.
[70] Id.
[71] Id. at 863.
[72] Id.

Initially, with regard to Lacroix, the failure to object to the trial judge's ruling on the Batson challenge waived the issue for purposes of appeal. State v. Richard, 216 So. 3d 1128, 1134 (La. App. 3rd Cir. 2017) (citations omitted). Therefore, appellate counsel was not ineffective for failing to raise a frivolous claim to challenge it. Dennis v. Vannoy, No. 16-6889, 2017 WL 9855222, at *15 (E.D. La. June 2, 2017), adopted, 2018 WL 3417872 (E.D. La. July 12, 2018) (finding appellate counsel was not ineffective for failing to pursue a Batson claim where no challenge was made at trial) (citations omitted).

Regardless, Gilbert's arguments as to all four prospective jurors focus on the second and third Batson steps. With respect to step two, "[a] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360 (1991). Gilbert contends that the prosecution's asserted race-neutral reasons were unfounded. At this step, however, the Court need not weigh plausibility or persuasiveness, but only facial validity. Here, the prosecutor's stated reasons for striking the four prospective jurors were facially neutral and not inherently discriminatory. Porter and Lacroix stated that they worked at elementary schools, and the prosecution explained that, in their experience, elementary school teachers tended to "forgive and forget."[73] Gabriel stated that he did not know what his verdict would be in response to a scenario by the defense in which both sides presented no evidence before resting.[74] The prosecutor struck him because "he had problems when [the trial judge] asked about reasonable

---

[73] Id. at 756–57, 853–84.
[74] Id. at 814–15.

doubt evidence," he was not sure about his verdict if he heard no evidence, and she was not sure whether Gabriel was paying attention.[75] The prosecutor struck Brown because she felt that she was not paying attention, she asked the prosecutor to repeat things, and did not seem very engaged in the voir dire.[76] Obviously, those reasons are **facially** valid and nondiscriminatory.

At the third step of the Batson analysis, the question is whether intentional discrimination in fact motivated the state's peremptory strikes. "This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Rice v. Collins, 546 U.S. 333, 338 (2006). As noted, the trial court found that the prosecution did not exercise its peremptory challenges against the four African-American men and women in a discriminatory manner.

A state court's finding under Batson's third step is a factual determination and must be reviewed under the AEDPA's specific and highly deferential standard of review applicable to such determinations. As the Supreme Court has explained:

> Under AEDPA, ... a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Thus, a federal habeas court can only grant [the petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence." § 2254(e)(1).

Rice, 546 U.S. at 338–39 (2006); accord Foster v. Chatman, 578 US. 488, 500 (2016) (Batson's third step "turns on factual determinations, and, in the absence of exceptional circumstances, we defer to state court factual findings unless we conclude that they are clearly erroneous."

[75] Id. at 852.
[76] Id.

(quotation marks omitted)); Murphy v. Dretke, 416 F.3d 427, 432 (5th Cir. 2005) ("A state trial court's finding of the absence of discriminatory intent is a pure issue of fact that is accorded great deference and will not be overturned unless clearly erroneous." (quotation marks omitted)). Therefore, even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, ... on habeas review that does not suffice to supersede the trial court's credibility determination." Rice, 546 U.S. at 341–42; accord Wood v. Allen, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

When evaluating the persuasiveness of a prosecutor's proffered justification, the trial court must be mindful that "[a] prosecutor's intuitive assumptions, inarticulable factors, or even hunches can ... be proper bases for rejecting a potential juror." United States v. Thompson, 735 F.3d 291, 297 (5th Cir. 2013).

Also:

> [C]ourts do not assess whether counsel's reason is suspect, or weak, or irrational. Instead, courts address whether counsel is telling the truth in his or her assertion that the challenge is not race-based. In determining whether a prosecutor discriminated on the basis of race, a court should consider the totality of the relevant facts.

Id. (citations and quotation marks omitted).

The state posed logical reasons for excluding the prospective jurors and the state courts found those reasons to be race-neutral. While Gilbert claims the record is silent regarding Brown having an adverse demeanor, the defense did not attempt to dispute the state's demeanor-based observations after the prosecution provided her reasons for the exercise of the peremptory. Similarly, the defense did not dispute the prosecution's claim regarding Gabriel's lack of attentiveness. Further, a prospective juror's demeanor, including inattentiveness, is a valid race-

neutral reason for exercising a peremptory challenge. Steven v. Epps, 618 F.3d 489, 501 (5th Cir. 2010); State v. Lawrence, 362 So. 3d 807, 820 (La. App. 5th Cir. 2022); see Moore v. Keller Indus., Inc., 948 F.2d 199, 202 (5th Cir. 1991) ("We also have found 'disinterested demeanor' and 'inattentiveness' to be valid, race-neutral reasons for peremptory strikes.") (collecting cases). Additionally, the trial judge presided over voir dire and was able to observe the demeanor of the prospective jurors as well as the prosecuting attorneys when they offered the explanation for the strikes. It was within his discretion to determine the credibility or truthfulness of the offered reasons, even when demeanor-based, in light of the proceedings before it. Thaler v. Haynes, 559 U.S. 43, 48 (2010).

Porter and Lacroix were struck due to the prosecution's belief that they were elementary school teachers, who tended to be more forgiving. A concern as to a prospective juror's occupation as a school teacher is an acceptable race neutral explanation. Jackson v. Crockett, 3:12cv124-DPJ-FKB, 2015 WL 1189826, at *8–9 (S.D. Miss. Mar. 16, 2015) (finding prosecution's reasons for each strike, including employment as a teacher, to be race-neutral); State v. Oneil, No. 25-KH-107, 2025 WL 1483970, at * 9 (La. App. 5th Cir. May 23, 2025) (citation omitted), writ denied, 422 So. 3d 753 (La. 2025); see Moore v. Vannoy, 968 F.3d 482, 491 (5th Cir. 2020) (recognizing "an 'occupation' that 'tend[s] to sympathize with criminal defendants' as a proper race-neutral reason for striking jurors" (citing United States v. Wallace, 32 F.3d 921, 925-26 n.5 (5th Cir. 1994)). While Gilbert points out that the record reflects that Porter and Lacroix stated that they worked at elementary schools, he points to no evidence that the prosecution deliberately misstated their testimony. Further, the record reflects that even the trial court believed that the prospective jurors testified that they were teachers.[77] Nor is there

---

[77] Id. at 853–54, 862–63.

any evidence that Porter and Lacroix were not in fact elementary school teachers. In any event, nothing in the records demonstrates that any other elementary school employee was retained as a juror.

Finally, the court may consider the composition of the final jury when deciding whether race neutral reasons are pretextual. Harris v. Kuhlmann, 346 F.3d 330, 346 (2nd Cir. 2003) (noting "the fact that the prosecutor initially accepted one black juror is a circumstance that might tend to rebut an inference that the prosecutor used his peremptory strikes in a discriminatory manner"); United States v. Williamson, 53 F.3d 1500, 1510 (10th Cir. 1995) ("[A]lthough the mere presence of members of a certain race on the final jury does not automatically negate a Batson violation, it can be a relevant factor, particularly when the prosecution had the opportunity to strike them.") (alteration omitted) (quoting United States v. Esparsen, 930 F.2d 1461, 1468 (10th Cir. 1991)) United States v. Puentes, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of African–American jurors does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the claim."); Simon v. Epps, No. 2:04-CV26-P, 2007 WL 4292498, at *31 (N.D. Miss. Nov. 30, 2007) (finding the prosecution's acceptance of the only other black prospective juror was significant to the issue of discriminatory intent), aff'd, 394 F. App'x 138 (5th Cir. 2010). Gilbert himself claims that the jury consisted of four white males, five white females, two Asians, and one African American.[78]

The determination on the issue of discriminatory intent by the trial court was based on all the facts and circumstances available, and that determination is entitled to great deference. The record in this case supports the trial court's crediting the proffered race-neutral reasons and

[78] Id. at 934, La. App. 5th Cir. Writ Application filed March 14, 2025.

finding no discriminatory motive behind the peremptory strikes. As a result, Gilbert fails to show that his Batson claim was "clearly stronger" than the suppression issue presented on appeal.

The denial of relief as to Gilbert's claim of ineffective assistance of appellate counsel was not contrary to or an unreasonable application of Strickland. Gilbert is not entitled to relief as to this claim.

## RECOMMENDATION

**IT IS RECOMMENDED** that the petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Oneil Gilbert, III, be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[79]

New Orleans, Louisiana, this 1st day of September, 2026.

Janis van Meerveld

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

[79] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.